NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0356n.06

No. 25-1471

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 13, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ERIC LAMONT THOMAS, | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| KIM CARGOR, Warden, | ) | MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | OPINION |

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Eric Lamont Thomas, an inmate in Michigan state custody, appeals the denial of his petition for a writ of habeas corpus. In 2014, Thomas pled no contest to first-degree criminal sexual conduct. The state trial court explained to Thomas that this charge carried a statutory maximum of life in prison and that his plea would waive his right to appeal as of right, but it assured him that he could still ask for leave to appeal. Thomas filed a post-conviction motion for relief from judgment under the Michigan Court Rules asserting that (1) his trial counsel failed to advise him of his plea's sentencing exposure or that his plea would waive his right to appeal non-jurisdictional issues even by leave; and (2) his plea was not knowing and voluntary because he did not understand his sentencing exposure when he pled. The state trial court denied the motion, and the state appellate courts denied leave to appeal. Thomas then filed his habeas petition in federal district court, asserting due process violations and ineffective

assistance of counsel claims related to his plea. For the following reasons, we **AFFIRM** the district

court's order denying habeas relief.

# I. BACKGROUND[1]

## A. Trial Proceedings

The charges against Thomas arose from a home invasion and rape that occurred in 1996.

In 2013, analysis of DNA evidence led prosecutors to charge Thomas and a codefendant as the

perpetrators.

At a pretrial hearing in the Wayne County Circuit Court ("the state trial court") on

September 5, 2014, Thomas was offered a plea deal under which he would be sentenced to 8 to 25

years, but Thomas declined the offer. The court clarified that, if found guilty at trial, Thomas's

applicable sentencing guidelines range would call for a minimum sentence falling between either

96−240 months (8–20 years) or 120–300 months (10–25 years).[2] The prosecutor stated that, if

successful at trial, the prosecution intended to seek a sentence near "the top end of the guidelines,"

a minimum term of 20 years with a maximum of 50 years. R. 8-3, Mot. Tr., PageID 199. The

---

[1] We draw our facts from the state court record as reflected by our previous decision in this case, *Thomas v. Burt*, No. 22-1802, 2023 WL 5447379, at *1–4 (6th Cir. Aug. 24, 2023).

[2] "Under Michigan's system of indeterminate sentencing, many crimes result in a minimum and a maximum sentence." *King v. Berghuis*, 744 F.3d 961, 963 (6th Cir. 2014); *see also People v. Drohan*, 715 N.W.2d 778, 790 (Mich. 2006), *overruled in part on other grounds by Alleyne v. United States*, 570 U.S. 99 (2013). The minimum is determined by Michigan's sentencing guidelines, and the maximum is often statutorily prescribed. *See People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). At the time of Thomas's sentencing, Michigan's sentencing guidelines were "mandatory," meaning that trial courts were required to impose a minimum sentence within the guidelines range unless they found "substantial and compelling reason[s]" to depart from the guidelines. Mich. Comp. Laws § 769.34(3) (2014); *Babcock*, 666 N.W.2d at 235–36. Once a defendant serves his minimum sentence, he becomes eligible for parole, and the Michigan Parole Board determines whether to release him prior to the expiration of his maximum term. *See* Mich. Comp. Laws § 791.234(1) (2014).

court again clarified the offer's terms, ensured that Thomas understood them, and provided him an opportunity to speak with his attorney, which Thomas declined before rejecting the offer.

Thomas continued to trial. During jury selection, on September 16, the court was notified that Thomas's codefendant had pled, and the court granted the prosecution's request to allow the codefendant to testify against Thomas. The case was adjourned to give Thomas the opportunity to speak with his counsel. When the case was recalled, Thomas's counsel announced that Thomas was going to offer a plea of no contest. Thomas and his attorney signed the Pretrial Settlement Offer and Notice of Acceptance form (the "Plea Form"). R. 26-2, Pretrial Settlement Offer, PageID 883. The Plea Form stated that the "Statutory Maximum Penalty" for Thomas's charge of criminal sexual assault was "Life" and listed Thomas's waived rights, including "the right to appeal as of right as to conviction and sentence." R. 26-2, PageID 883.

The state trial court, after placing Thomas under oath, began the plea colloquy. During the colloquy, Thomas confirmed that he reviewed the Plea Form with his attorney and understood it, was satisfied with his representation, and that he personally signed the Form. The court also asked Thomas, "[d]o you understand that by pleading guilty to Criminal Sexual Conduct in the First Degree that the statutory maximum penalty is life [in] prison? Do you understand that, sir?" R. 8-4, Plea Tr., PageID 286. Thomas answered, "Yes." R. 8-4, PageID 286.

Regarding the plea's waiver of Thomas's constitutional rights, the court asked "[d]o you understand you're giving up your right to an automatic right of appeal?" R. 8-4, PageID 288. Pausing before responding, Thomas asked, "once this is over with [you're] saying I can't appeal this case?"; to which the court responded, "[w]ell, you don't have an automatic right to it, but you could ask for leave to appeal, but you don't have an automatic right to appeal." R. 8-4, PageID 288. Thomas and his attorney conferred, after which the court asked again, "[d]o you understand you're

giving up your right to an automatic right of appeal?" R. 8-4, PageID 288–89. Thomas's counsel said, "Yes." R. 8-4, PageID 289. Following additional questioning by the court, Thomas agreed that he was entering the plea "knowingly, intelligently, voluntarily, understandably [sic], and accurately." R. 8-4, PageID 289. All other charges against Thomas were dismissed before trial as barred by the statute of limitations.

The parties appeared before the state trial court for sentencing on October 14 and agreed that the guidelines called for a minimum term of "180 to 360 [months] or life." R. 8-6, Sent'g Tr., PageID 307–08. The court asked Thomas if he "had an adequate opportunity to review both the presentence report and the sentencing guidelines with [his] attorney," and Thomas responded "[y]eah, yes." R. 8-6, PageID 308. Thomas also confirmed that there were no "additions, corrections, deletions, [or] factual changes" he wished to make to the report or the guidelines. R. 8-6, PageID 308. The prosecutor requested a sentence at "the upper limits of the guidelines," and Thomas's counsel asked for a sentence at the bottom. R. 8-6, PageID 312–13. When the court asked Thomas if he wanted to say anything, he stated, "[n]othing. I plea[d] no contest. I just—I don't have nothing to say. I mean it's a bunch of violations in this case and I'll just, I'm going to come back on appeal." R. 8-6, PageID 314. The state trial court sentenced Thomas to a minimum term of 280 months and a maximum of 700 months (about 23–58 years).

## B.    Direct Appeal

In April 2015, Thomas filed a pro se motion to withdraw his plea in the state trial court, asserting that his plea was "not knowing, voluntary, and intelligent" because he was unaware that it prevented him from raising non-jurisdictional issues on appeal. R. 8-11, Mot. to Withdraw Plea, PageID 392. In a sworn Affidavit attached to his motion, Thomas stated that, at the time of his plea, he believed he could appeal issues "related to the investigation of [his] case, [his] rights to a

speedy trial, [*B*]*rady* violation, prosecutorial misconduct, sentencing, ineffective assistance of counsel, and other issues [he] believed were present in [his] case." R. 8-11, PageID 398. And, according to Thomas, if he had known he could not appeal those issues, he would instead have insisted on going to trial. The court denied this motion as untimely and frivolous.

In December 2015, the Michigan Court of Appeals summarily denied Thomas's delayed application for leave to appeal the state trial court's denial of his motion to withdraw. Thomas then filed a pro se application for leave to appeal in the Michigan Supreme Court, asserting new ineffective assistance of counsel claims regarding his appellate counsel, which the Court denied in a standard form order. *See People v. Thomas*, 880 N.W.2d 553 (Mich. 2016) (mem.).

### C.      State Post-Conviction Proceedings

In June 2017, Thomas filed a post-conviction motion for relief from judgment under Michigan Court Rules (MCR) subchapter 6.500 ("MCR 6.500 motion") in the state trial court. That subchapter governs the procedures for post-appeal relief from a criminal conviction and is the exclusive means to challenge a conviction once a defendant has exhausted the normal appellate process. *People v. McSwain*, 676 N.W.2d 236, 248–49 (Mich. Ct. App. 2003). The motion identified two issues: First, Thomas argued that his right to due process was violated because his plea was illusory, involuntary, unknowing, and provided no benefit to him, making it an unenforceable unconscionable contract. Second, Thomas argued that he was deprived of the effective assistance of his trial counsel because counsel "wrongfully advised" him and that he was not informed that "the entry of his plea would waive all the issues he wanted to raise" on an appeal. R. 8-9, 6.500 Mot., PageID 344, 348.

The state trial court, acting as the post-conviction court, denied the motion in a four-page opinion. Opinion, *People v. Thomas*, No. 14-002760-01-FC (Mich. Cir. Ct. Wayne Cnty. Mar. 9,

2018). Thomas then filed a delayed application for leave to appeal with the Michigan Court of Appeals, raising the same issues, which the court denied. Order, *People v. Thomas*, No. 345303 (Mich. Ct. App. Oct. 25, 2018). Thomas next filed a pro se application for leave to appeal with the Michigan Supreme Court, which the Court denied in a one-sentence order. *People v. Thomas*, 931 N.W.2d 362 (Mich. 2019) (mem.).

**D.      Federal Habeas Corpus Proceedings**

1.      <u>Thomas's § 2254 Petition</u>

In September 2019, Thomas filed a petition for habeas relief under 28 U.S.C. § 2254 in federal district court, asserting the following eight claims:

1.  **Due Process—Illusory Plea**: Thomas entered into a plea agreement – as embodied in the Plea Form – and the agreement violated his due process rights because it conferred no benefit on him.

2.  **Due Process—Sentencing Exposure**: Thomas's plea violated his due process rights because Thomas was unaware of his sentencing exposure when he pleaded no contest.

3.  **Due Process—Appellate Waiver**: Thomas did not understand that his no contest plea waived his right to an automatic appeal and his right to appeal non-jurisdictional defects that occurred before he entered his plea, and thus his plea violated due process.

4.  **Ineffective Assistance of Trial Counsel—Illusory Plea**: Thomas's trial counsel provided ineffective representation when he failed to explain to Thomas that his no contest plea offered him no benefit.

5.  **Ineffective Assistance of Trial Counsel—Sentencing Range**: Thomas's trial counsel provided ineffective representation when he failed to explain to Thomas the sentencing exposure that Thomas faced.

6.  **Ineffective Assistance of Trial Counsel—Appeal Waiver**: Thomas's trial counsel provided deficient representation when he failed to explain to Thomas that Thomas's no contest plea prevented him from raising on appeal non-jurisdictional defects that occurred before he entered his plea.

7.  **Ineffective Assistance of Appellate Counsel—Failure to Raise Due Process Challenges**: Thomas's appellate counsel provided deficient representation when he failed to raise on appeal certain due process challenges to the entry of Thomas's plea.

8. **Ineffective Assistance of Appellate Counsel—Failure to Raise Ineffective Assistance of Trial Counsel**: Thomas's appellate counsel provided deficient representation when he failed to assert ineffective assistance of trial counsel in his appeal challenging the denial of Thomas's motion to withdraw his plea.

R. 31, Op. and Order Denying Habeas Relief, PageID 945–46 (citation modified).

As detailed above, these eight claims were raised at different times in the state courts. To summarize, Thomas raised his Due Process—Appellate Waiver claim (claim 3) in his motion to withdraw his plea, which was directly appealed to the Michigan Court of Appeals and Michigan Supreme Court. He raised his ineffective assistance of appellate counsel claims (claims 7 and 8) in his application for leave to appeal his motion to withdraw to the Michigan Supreme Court. And then he raised a second series of claims (the "Later Presented" claims), the due process illusory plea and sentencing exposure claims (claims 1 and 2), and the ineffective assistance of trial counsel claims (claims 4–6), in his motion for relief from judgment.

2.    *Thomas I*: The District Court's First Opinion

In September 2022, the district court decided that Thomas had procedurally defaulted the Later Presented claims (claims 1, 2, 4–6) but addressed the merits of Thomas's Due Process—Appellate Waiver claim (claim 3), holding that it was not procedurally defaulted and was properly exhausted in the state courts. *Thomas v. Burt*, No. 19-CV-12775, 2022 WL 4088183, at *12–14, *17–20 (E.D. Mich. Sep. 6, 2022) (hereinafter *Thomas I*). In its adjudication of claim 3, the district court held that the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), precludes relief but issued a certificate of appealability on all issues. *Id.* at *19–21. Thomas timely appealed.

3.    *Thomas II*: This Court's First Opinion

On August 24, 2023, we issued an opinion and order affirming in part and reversing in part the district court's first opinion. *Thomas v. Burt*, No. 22-1802, 2023 WL 5447379, at *1 (6th Cir.

Aug. 24, 2023) (hereinafter *Thomas II*). We affirmed the district court's denial of relief on claim 3 and reversed the ruling that Thomas had procedurally defaulted the Later Presented claims. *Id.* at *7, *10. Our opinion remanded the Later Presented claims to the district court and dismissed the ineffective assistance of appellate counsel claims (claims 7 and 8), holding that they were raised solely to excuse any procedural defect, not as independent claims. *Id.* at *7. In sum, the following claims were returned to the district court for review: Due Process—Illusory Plea (claim 1); Due Process—Sentencing Exposure (claim 2); Ineffective Assistance of Trial Counsel— Illusory Plea (claim 4); Ineffective Assistance of Trial Counsel—Sentencing Range (claim 5); and Ineffective Assistance of Trial Counsel—Appeal Waiver (claim 6). *See id.*

### 4. The District Court's Post-Remand Opinion

On May 8, 2025, the district court issued its post-remand opinion holding that the state trial court's order denying Thomas's Later Presented claims in his motion for relief from judgment was to be reviewed under § 2254(d) of AEDPA, and that AEDPA barred relief on all claims. *Thomas v. Burt*, 785 F. Supp. 3d 226, 241, 251 (E.D. Mich. 2025). Now, Thomas timely appeals this denial of relief as to the following three claims only:

- Due Process—Sentencing Exposure (claim 2) ("the Due Process Sentencing Claim")

- Ineffective Assistance of Trial Counsel—Sentencing Exposure (claim 5) ("the Sentencing IATC Claim")

- Ineffective Assistance of Trial Counsel—Appellate Waiver (claim 6) ("the Appellate Waiver IATC Claim")

## II. LAW AND ANALYSIS

### A. Standard of Review

We review legal conclusions underlying a district court's denial of a petition for habeas corpus de novo and review its factual findings under the clear error standard. *Fleming v. Metrish*,

556 F.3d 520, 524 (6th Cir. 2009). As a "person in custody pursuant to the judgment of a State court," Thomas brings his habeas petition under 28 U.S.C. § 2254 of AEDPA. 28 U.S.C. § 2254(a). The highly deferential standard set out by § 2254(d), also known as AEDPA deference, permits a federal court to grant habeas relief only where a state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

*Id.* § 2254(d)(1)–(2); *see Stermer v. Warren*, 959 F.3d 704, 720–21 (6th Cir. 2020). If a petitioner's claim was never "adjudicated on the merits" by a state court, then AEDPA deference does not apply; instead, the petitioner's claim is reviewed de novo. *Stermer*, 959 F.3d at 721 (quoting 28 U.S.C. § 2254(d)).

To determine whether AEDPA deference applies to the claims on appeal here, we therefore begin with whether the state courts adjudicated those claims on the merits. *See id.* To make that determination, "we look to 'the opinion of the last state court to issue a reasoned opinion on the issue.'" *Jones v. Shoop*, 173 F.4th 759, 775 (6th Cir. 2026) (quoting *Moss v. Miniard*, 62 F.4th 1002, 1011 (6th Cir. 2023)). In *Harrington v. Richter*, the Supreme Court held that "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." 562 U.S. 86, 99 (2011). This presumption may be rebutted in "limited circumstances," such as "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court," *Johnson v. Williams*, 568 U.S. 289, 301, 303 (2013), or "when there is reason to think some other explanation for the state court's decision is more likely," *Richter*, 562 U.S. at 99–100.

Here, Thomas raised the three claims on appeal—the Sentencing and Appellate Waiver IATC Claims and the Due Process Sentencing Claim—in his post-conviction MCR 6.500 motion. As noted above, three Michigan state courts then issued decisions addressing this motion: The state trial court denied Thomas's motion in a four-page opinion on the grounds that he had not established a "cognizable claim upon which relief might be granted," pursuant to Michigan Court Rules. R. 8-10, Op. Denying Mot. for Relief from J., PageID 373; Opinion at 4, *Thomas*, No. 14-002760-01-FC. The Michigan Court of Appeals then denied Thomas's delayed application for leave to appeal in a one-sentence order for "fail[ing] to establish that the trial court erred in denying the motion for relief from judgment." R. 8-14, Court of Appeals Order, PageID 668; Order, *Thomas*, No. 345303. Next, the Michigan Supreme Court denied his application for leave to appeal in a one-sentence order for "fail[ing] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." R. 8-14, Mich. S. Ct. Order, PageID 671; *Thomas*, 931 N.W.2d at 362.

Because both the Michigan Court of Appeals and the Michigan Supreme Court summarily denied Thomas's claims in one-sentence orders without reasoning, we "look through" to the state trial court opinion. *Stermer*, 959 F.3d at 722–24 (quoting *Wilson v. Sellers*, 584 U.S. 122, 125 (2018)). The state trial court's four-page opinion quotes verbatim the heading of Thomas's motion, expressly acknowledging that he raised claims of ineffective assistance and a due process violation:

> Defendant avers: (1) he was denied his 14th, 6th, and 5th Amendment Constitutional Rights to due process of law and a fair trial, and is entitled to withdraw his nolo contendere plea where the plea was illusory, involuntary and unknowing . . .; (2) he was deprived of his liberty and the effective assistance of counsel where counsel wrongfully advised him to plead guilty . . . , and where he unknowingly waived his Constitutionally protected rights to an appeal of right.

R. 8-10, PageID 370–71 (first alteration in original) (quoting R. 8-9, PageID 344). The court then found "no error attributed to trial counsel, or the Court in the course of Defendant's plea and sentencing proceedings." R. 8-10, PageID 371. And it concluded that "the record reveals no defect in the plea proceedings that would necessitate a new trial" before ultimately denying Thomas's Motion under the applicable sections of the Michigan Court Rules. R. 8-10, PageID 371. Although the court's analysis may be sparse, *Richter*'s presumption "prevails even when the state court's opinion wholly omits discussion of the federal claim," *Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020), and it applies with equal force "when a state-court opinion addresses some but not all of a defendant's claims," *Johnson*, 568 U.S. at 298. Applying that presumption here, where the state trial court identified the appealed claims by name, specified their federal constitutional basis, and expressly rejected them, we must conclude that the state trial court adjudicated Thomas's claims on the merits. *See Smith*, 956 F.3d at 387–88. We therefore apply AEDPA deference to the state trial court's opinion.

## B.    Analysis

Thomas contends that he is entitled to habeas relief under § 2254(d)(1) solely on the basis that the state trial court unreasonably applied clearly established federal law as determined by the Supreme Court. We therefore limit our review to whether Thomas can satisfy subsection (d)(1)'s "unreasonable application" clause.

"The term 'unreasonable' refers not to 'ordinary error' or even to circumstances where the petitioner offers 'a strong case for relief,' but rather to 'extreme malfunctions in the state criminal justice syste[m].'" *Mays v. Hines*, 592 U.S. 385, 391 (2021) (per curiam) (alteration in original) (quoting *Richter*, 562 U.S. at 102). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This is a "highly deferential standard . . . [that] demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

We turn to the merits of Thomas's appealed claims, asking whether the state trial court unreasonably applied Supreme Court precedent in concluding that those claims did not warrant relief.

### 1.     Ineffective Assistance of Trial Counsel Claims (claims 5 and 6)

Thomas argues that his trial counsel provided constitutionally ineffective assistance in two distinct ways:  first, by failing to advise Thomas that his plea waived his right to appeal, even by leave, all non-jurisdictional issues (Appellate Waiver IATC Claim, claim 6); and second, by failing to adequately advise Thomas about the sentencing exposure he faced as a result of his plea (Sentencing IATC Claim, claim 5).

The federal standard governing ineffective assistance of counsel claims is the two-part test of *Strickland v. Washington*. 466 U.S. 668 (1984). Under the deficient performance prong of the test, a court examines whether counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Under the prejudice prong, the inquiry is whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. On de novo review, *Strickland*'s standard for judging counsel's representation is highly deferential, and under § 2254(d)(1) it becomes "doubly so" as the two frameworks operate in tandem. *Richter*, 562 U.S. at 105 (citation modified) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). *Richter* explains that because *Strickland*'s standard is a general one, "the range of reasonable applications is substantial." *Id.* And it specifies

that the appropriate inquiry under § 2254(d)(1) is "not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### a. Appellate Waiver IATC Claim (claim 6)

The district court held that the state trial court could have reasonably denied this claim because it is not clearly established that *Strickland* or the Sixth Amendment requires Thomas to understand the nuances of his appellate waiver to enter a voluntary plea. To explain this conclusion, the district court turned to the Supreme Court's development of the *Strickland* standard. One year after deciding *Strickland*, the Supreme Court extended its standard generally to the plea process, *Hill v. Lockhart*, 474 U.S. 52, 57–58 (1985), but "explicitly left open whether advice concerning a collateral consequence must satisfy Sixth Amendment requirements," *Chaidez v. United States*, 568 U.S. 342, 349 (2013) (citing *Hill*, 474 U.S. at 60). Based on this open question, state and lower federal courts have concluded "that an attorney need *not* give advice concerning [a] collateral (as opposed to direct) consequence of a guilty plea." *Id.* at 346, 350 (citation modified) (emphasis in original). The Supreme Court confronted this direct-collateral distinction in *Padilla v. Kentucky* when it held that the Sixth Amendment requires defense attorneys to inform non-citizen clients of the deportation risks of guilty pleas. 559 U.S. 356, 360 (2010). The Court observed that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*," *id.* at 365 (citing *Strickland*, 466 U.S. at 689), and refused to do so in *Padilla* "because of the unique nature of deportation," *id.* Reasoning that "it would not have been a violation of clearly established federal law for the state courts to have concluded that Thomas'[s] waiver of his right to appeal non-jurisdictional defects was a collateral consequence of his no-

contest plea," the district court held that trial counsel's failure to advise him of that consequence was not a Sixth Amendment violation.

Thomas argues that the district court erred in three respects: (1) it misapplied the "clearly established" standard, (2) it applied an overly deferential standard of AEDPA deference, and (3) it relied on an unreasonably narrow record. We address each argument in turn.

Regarding the first argument, Thomas concedes that no Supreme Court case has specifically addressed the obligation of counsel to advise a defendant about the nuances of appellate waivers. He then turns to the Supreme Court's holding in *Andrew v. White*, that "[g]eneral legal principles can constitute clearly established law," 604 U.S. 86, 94 (2025), and seeks to extrapolate such a general principle from *Strickland*. Thomas proposes a principle requiring courts to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Appellant's Br. 25-26 (quoting *Strickland* 466 U.S. at 690). But this language is merely a small part of the Court's framework for assessing the first prong of *Strickland*'s test, the reasonableness of counsel's performance. *See* 466 U.S. at 690.

*Andrew* held that "holdings of th[e Supreme] Court" can provide "[g]eneral legal principles" that "constitute clearly established law for purposes of AEDPA." 604 U.S. at 94. Referencing the due process general principle articulated in *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), *Andrew* instructs that "certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." 604 U.S. at 95 (quoting *White v. Woodall*, 572 U.S. 415, 427 (2014)). But Thomas fails to explain how a fragment of the Court's application framework for only one prong of *Strickland*'s test rises to a "fundamental" principle under *Andrew*, nor has he pointed to caselaw supporting such argument.

-14-

*Id.* (quoting *White*, 572 U.S. at 427). We therefore cannot say that the district court misapplied the "clearly established" standard.

Next, Thomas argues that the district court applied an "overly deferential standard of review under AEDPA" by "speculating about alternative rationales that could have supported the state[ trial court's] ruling." Appellant's Br. 13. The Supreme Court first held in *Richter* that § 2254(d)(1) requires a habeas court to determine "what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." 562 U.S. at 102. The Court subsequently clarified in *Wilson*, that "when the last state court to decide" a habeas petitioner's federal claim "explains its decision on the merits in a reasoned opinion . . . , a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." 584 U.S. at 125.

According to Thomas, the district court was required to apply *Wilson*, training its attention on the state trial court's opinion in denying his IATC claims. But that opinion provided no reasoning or reference to facts or law, merely stating there was "no error attributed to trial counsel . . . in the course of Defendant's plea and sentencing proceedings." R. 8-10, PageID 371. This perfunctory denial fails to provide "specific reasons" to which a habeas court can defer. *Wilson*, 584 U.S. at 125. Because the state trial court's opinion offers no more explanation than a single-sentence denial, it is an unexplained decision under *Richter*, and the district court was permitted to look at what theories "could have supported" the state trial court's decision. 562 U.S. at 102.

*Richter* likewise forecloses Thomas's argument that the state trial court's failure to apply *Strickland* is objectively unreasonable under § 2254(d)(1). "[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 98. Indeed, "a state court need not cite or even be aware of" Supreme Court cases under § 2254(d). *Id.* This argument therefore also fails.

Thomas's final argument contends that the state trial court failed to examine his trial counsel's performance both on and off the record, and that such narrow review of the record is objectively unreasonable under § 2254(d)(1). To start, the state trial court's opinion suggests that it examined the proceedings as a whole, finding "no error attributed to trial counsel . . . *in the course of* Defendant's plea and sentencing proceedings." R. 8-10, PageID 371 (emphasis added). To end, Thomas fails to cite clearly established law requiring the state trial court to review off-record conduct when analyzing a *Strickland* claim. He seeks to rely on *United States v. Morris*, 470 F.3d 596, 602 (6th Cir. 2006), but *Morris* says nothing about AEDPA deference. More importantly, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" therefore it cannot be the basis for relief under AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)).

Before concluding, we note that the arguments underlying this claim would warrant serious consideration on de novo review. As we observed in our prior disposition of Thomas's Due Process—Appellate Waiver Claim (claim 3), "the record supports Thomas's argument that he was unaware of the extent of the appellate waiver of non-jurisdictional issues, and certainly makes clear that he was not advised about this aspect of the appellate waiver." *Thomas II*, 2023 WL 5447379, at *9. But, as we held in our disposition of claim 3, AEDPA's highly deferential

standard governs our review and precludes relief. *Id.* at \*10. Because Thomas has cited no Supreme Court decision prohibiting the state trial court's denial of his Appellate Waiver IATC claim, he cannot establish an "unreasonable application" under § 2254(d)(1).

### b.     *Sentencing IATC Claim (claim 5)*

Thomas contends that his trial counsel was ineffective by failing to fully explain the sentencing exposure Thomas faced as a result of his plea. Insofar as the arguments raised in the previous IATC claim apply here, they also fail. Just as in the Appellate Waiver IATC claim, the district court was permitted on this claim to consider what theories the state trial court could have reasonably relied on in denying this claim. *See Richter*, 562 U.S. at 102.

Recall that, before trial, the prosecutor offered Thomas a guilty plea with a sentencing range of 8–25 years. Thomas was also informed that if he proceeded to trial, the applicable guidelines would place his minimum term generally between either 8–20 years or 10–25 years. The prosecution told the court that it intended to seek a sentence of 20-50 years. Thomas rejected the plea offer but later chose to enter a no contest plea that exposed him to a maximum sentence of life. The parties agreed that the guidelines call for a minimum of "180 to 360 [months] or life." R. 8-6, PageID 307. Thomas confirmed on the record that he reviewed his presentence report and guidelines with his attorney, and that he had no "additions, corrections, deletions, [or] factual changes." R. 8-6, PageID 308. Based on this record, a fairminded jurist could conclude that if Thomas had truly been surprised at the hearing by his plea's sentencing exposure, he would have raised the issue with the court or his counsel. This is underscored by his Affidavit, supporting his motion to withdraw his plea, which included the claim that he was not advised of his appellate waiver rights but did not mention any issues with sentencing exposure. For these reasons, the state trial court could have reasonably denied relief by concluding that Thomas failed to present

sufficient evidence that he was not adequately advised of his guidelines range when he entered his no-contest plea.

In sum, Thomas has failed to establish that the state trial court's denial of both his Appellate Waiver and Sentencing IATC claims was an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court" under § 2254(d)(1). We therefore cannot grant habeas relief as to either claim.

2.       Due Process Sentencing Claim (claim 2)

Thomas argues that he was deprived of due process because he did not understand his sentencing exposure when he pled. The district court held that the state trial court could have reasonably denied relief for two reasons (1) the record could be understood to show that Thomas did, in fact, know his guidelines range when he pled; and, (2) even if he was only advised of his plea's maximum sentence, such understanding satisfies due process under clearly established law. Thomas challenges both of these reasons.

First, Thomas disputes the district court's reading of the record, contending the state trial court could not reasonably conclude he understood his sentencing exposure when he pled. He argues the record shows his inherent misunderstanding based on the sentencing discussions surrounding the September 5 plea offer. But Thomas declined that offer twice, and it was apparent that he was going to trial as the parties were "in the middle of picking a jury" at the September 16 hearing. R. 8-4, PageID 270. It was not until the prosecutor informed Thomas that his codefendant was going to testify against him at trial that circumstances changed. After an extensive discussion on the record about this anticipated testimony, Thomas had a recess of approximately 30 minutes with counsel, and upon returning, counsel informed the court that Thomas decided to plead no contest. The court then began the plea colloquy, during which Thomas confirmed he signed the

Plea Form stating that he faced a maximum possible penalty of life imprisonment, and that he understood this maximum. On this record, the state trial court could reasonably conclude Thomas understood that his sentencing exposure had changed once he rejected the plea *offer* because his new plea *agreement* carried a maximum penalty of life. And, as explained in our analysis of the Sentencing IATC Claim, the court could also reasonably infer from Thomas's statements at the October 14 sentencing hearing and from his motion to withdraw Affidavit that he was aware of his sentencing exposure when he entered his plea agreement.

Second, Thomas disagrees with the district court's reading of the law. He relies on *Boykin v. Alabama*, 395 U.S. 238 (1969), and *Brady v. United States*, 397 U.S. 742 (1970). In *Brady*, the Supreme Court held that, to satisfy due process, a plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. at 748. In *Boykin*, the Court emphasized that a plea must be accompanied by "an affirmative showing that it was intelligent and voluntary," noting in a footnote that trial courts, in accepting a guilty plea, are "best advised to conduct an on the record examination of the defendant" that includes an attempt to satisfy itself of the defendant's understanding of "the permissible range of sentences." 395 U.S. at 242, 244 n.7 (quoting *Commonwealth ex rel. West v. Rundle*, 237 A.2d 196, 198 (Pa. 1968)). Under this "clearly established" law, Thomas argues that mere knowledge of the statutory maximum is not "sufficient awareness" of a plea's "likely consequences" under *Brady*, 397 U.S. at 748, nor is it an understanding of "the permissible range of sentences" under *Boykin*, 395 U.S. at 244 n.7 (quoting *West*, 237 A.2d at 198)).

Thomas, however, has failed to cite any Supreme Court precedent requiring this expansive interpretation of *Brady* and *Boykin*. Indeed, this court in *Ruelas v. Wolfenbarger*, confirmed the contrary, holding that "[w]hile a defendant need not know all the possible consequences of his

plea, . . . he must be aware of the maximum sentence to which he is exposed." 580 F.3d 403, 408 (6th Cir. 2009). Although not "clearly established Federal law" under § 2254(d)(1), *Ruelas* shows that a fairminded jurist could reasonably interpret "likely consequence" or "permissible range" as requiring knowledge of the statutory maximum only. *See Carey v. Musladin*, 549 U.S. 70, 76–77 (2006). We therefore cannot say that the state trial court unreasonably applied clearly established Supreme Court precedent in holding that Thomas's plea was sufficient under the Due Process Clause. *See Richter*, 562 U.S. at 102.

## III.   CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's holding that the state trial court did not unreasonably apply a rule clearly established by the Supreme Court when it decided Thomas's Sentencing and Appellate Waiver IATC claims and his Due Process Sentencing claim.